## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATEWIDE TOWING ASSOCIATION, INC., )<br>TOWING AND RECOVERY ASSOCIATION )<br>OF AMERICA, INC., C&L TOWING, LLC, )<br>WALTHAM AUTO TOW, INC., )<br>INTERSTATE WRECKER SERVICE, INC., )<br>SCHLAGER'S AUTO BODY REPAIR, INC., )<br>and TODISCO SERVICES, INC., )<br> )<br>     Plaintiffs, )<br> )<br>v. )<br> )<br>MASSACHUSETTS STATE POLICE, )<br> )<br>     Defendant. ) | Civil Action No.: _____ |

## COMPLAINT

Plaintiffs, Statewide Towing Association, Inc., Towing and Recovery Association of America, Inc., C&L Towing, LLC, Waltham Auto Tow, Inc., Interstate Wrecker Service, Inc., Schlager's Auto Body Repair, Inc., and Todisco Services, Inc. (hereinafter collectively "Plaintiffs"), by and through their attorneys, file their complaint against the Massachusetts State Police (hereinafter "MSP") and state the following:

### PARTIES

1. The Plaintiff, Statewide Towing Association, Inc. (hereinafter "STA"), is a Massachusetts nonprofit corporation with a principal office at 27 South Hunt Road, Amesbury, Essex County, Massachusetts.  STA is an organization representing the towing and recovery industry in the Commonwealth.  The MSP's proposed Request for Response # SP20-TOW-X81 (hereinafter "RFR"), which is the subject of this litigation, affects many of STA's members, including those named as co-Plaintiffs.

2. The Plaintiff, Towing and Recovery Association of America, Inc. (hereinafter "TRAA") is a Florida nonprofit corporation with a principal office at 700 12th Street NW, Suite 700, Washington, DC 20005.  TRAA is a national organization representing the towing and recovery industry in the United States.  The MSP's proposed RFR affects many of the TRAA's members, as well as the TRAA itself, as the proposed RFR specifically excludes the TRAA as an approved training program.

3. The Plaintiff, C&L Towing, LLC (hereinafter "C&L"), is a Massachusetts limited liability company with a principal office at 298 North Street, Randolph, Norfolk County,

Massachusetts.  C&L is a towing and recovery company located within the MSP's Troop H barracks and will be affected by the MSP's proposed RFR.

4. The Plaintiff, Waltham Auto Tow, Inc. (hereinafter "WAT"), is a Massachusetts corporation with a principal office at 281 Crescent Street, Waltham, Middlesex County, Massachusetts.  WAT is a towing and recovery company located within the MSP's Troop H barracks and will be affected by the MSP's proposed RFR.

5. The Plaintiff, Interstate Wrecker Service, Inc. (hereinafter "Interstate") is a Massachusetts corporation with a principle office at 239 Revere Street, Canton, Norfolk County, Massachusetts.  Interstate is a towing and recovery company located within the MSP's Troop H barracks and will be affected by the MSP's proposed RFR.

6. The Plaintiff, Schlager's Auto Body Repair, Inc. (hereinafter "Schlager") is a Massachusetts corporation with a principle office at 299 Centre Street, Quincy, Norfolk County, Massachusetts.  Schlager is a towing and recovery company located within the MSP's Troop H barracks and will be affected by the MSP's proposed RFR.

7. The Plaintiff, Todisco Services, Inc. (hereinafter "Todisco") is a Massachusetts corporation with a principle office at 94 Rear Condor Street, East Boston, Middlesex County, Massachusetts.  Todisco is a towing and recovery company located within the MSP's Troop H barracks and will be affected by the MSP's proposed RFR.

8. The Defendant, MSP, is an agency within the Executive Office of Public Safety and Security, an administrative branch of the government of the Commonwealth of Massachusetts, and is located at 470 Worcester Road, Framingham, Middlesex County, Massachusetts.  The MSP has initiated the RFR which is the subject of this litigation.

## JURISDICTION AND VENUE

9. The case presents a federal question within this Court's jurisdiction under 28 USC § 1331, namely 49 USC § 14501 (Federal Aviation Administration Authorization Act).

10. Declaratory relief is authorized under 28 USC §§ 2201 and 2202.

11. This Court has personal jurisdiction over MSP as it is an agency of the Commonwealth.

12. Venue is proper in this Court under 28 USC § 1391 because the parties reside in this District, and the events giving rise to Plaintiffs' causes of action occurred in this District.

## FACTS

13. STA is an organization that represents in excess of two hundred (200) members in the towing and recovery industry within the Commonwealth.  The MSP's proposed

RFR, which is the subject of this litigation, affects many of STA's members, including those named as co-Plaintiffs.

14. On September 16, 2019, the MSP introduced the RFR. See Ex. 1.

15. According to the RFR, the MSP is "soliciting bidders for the acquisition of Tow, Recovery, Service, and HAZMAT services, across the Commonwealth in order to maintain public safety and provide rapid assistance to motorists." See Id. at p. 1.

16. Contrary to the MSP's alleged stated purpose behind implementing the RFR, once the document is analyzed in great detail, the RFR is an unprecedented, usurpation of power by the MSP over towing and recovery companies within the Commonwealth.

17. Within the RFR, there exists a myriad of regulatory provisions which are unreasonable, arbitrary, and conflict not only internally with the RFR itself, but with both federal and state law.

18. In addition, the MSP has set unrealistic deadlines with which prospective towing and recovery companies are supposed to comply with in order to even apply under the RFR.

19. The MSP is attempting to regulate the prices, routes, and services of towing and recovery companies without the requisite legal authority to do so.

20. Regulatory authority over the towing and recovery industry in the Commonwealth is strictly reserved for the Department of Public Utilities[1] (hereinafter "DPU") pursuant to M.G.L. c. 159B et. seq.

21. The DPU's exclusive regulatory authority is limited to the confines of regulation permissible under 49 USC § 14501.

22. The RFR contains provisions which are impermissible under both federal and state law.

23. The MSP is divided into six (6) different troop patrol areas, identified as Troop A – D, F, and H.

24. Within each troop are several different barracks located in different cities/towns within the Commonwealth.

25. Presently, the MSP is introducing the RFR in only the Troop H barracks but plans on introducing the RFR to the remainder of the Commonwealth after the initial Troop H implementation phase.

---

[1] Formerly the Department of Telecommunications and Energy.

26. TRAA is the only national trade association representing the towing and recovery industry in the United States and provides training to members of the industry through its National Driver Certification Program, which is the only such program recognized by the Federal Highway Administration.

27. TRAA has approximately thirty (30) currently certified towing and recovery companies in Massachusetts, some of whom will be directly affected by the MSP's proposed regulation.

28. In addition to the TRAA, the RFR affects many of STA's members as well, including those named as co-Plaintiffs.

29. For several decades, the MSP has had an agreement with various towing and recovery companies located throughout the Commonwealth to provide emergency services to the motoring public on the roadways which the MSP patrols.

30. The agreement between the MSP and the towing and recovery companies is memorialized in writing and entitled "Department of State Police Tow Service Agreement" (hereinafter "TSA"). See Ex. 2.

31. The TSA is the sole governing document between the MSP and towing and recovery companies.

32. The TSA outlines how a towing and recovery company can apply to be on the MSP's tow list, the minimum insurance and equipment requirements, the differing categories to which a towing and recovery company can apply, required response times, what constitutes a violation of the TSA, the corresponding penalties associated with a violation of the TSA, and an administrative appeal process along with the responsibilities of the parties, among other things. See Id.

33. Under the current TSA regime, towing and recovery companies can apply to be on one, or multiple, of the MSP's barrack's tow lists if it meets the qualifications and there is a need for their services.

34. The proposed RFR would entirely scrap the TSA, leaving those towing and recovery companies currently performing services for the MSP under the TSA with no recourse and forcing them to re-apply under the RFR, and possibly losing areas they are already under contract to provide towing and recovery services.

35. Many of the towing and recovery companies that are currently contracted under the TSA have invested in excess of one million ($1,000,000.00) dollars in order to have the necessary equipment, training and facilities required by the TSA.

36. Many of the towing and recovery companies that are currently contracted under the TSA have entered into long-term loans and leases to finance the purchase of the

equipment that is necessary to comply with its requirements and suffer economic loss if they were displaced by the RFR.

37. In many, if not all cases, based on the equipment specifications contained in the RFR, towing and recovery companies will be required to invest large amounts of capital even if the MSP awards them the area that they currently service.

38. If the RFR is implemented, towing and recovery companies currently contracted under the TSA will lose important procedural appeal rights for any alleged violations of the terms and conditions that they currently enjoy.

39. The MSP aims to supplant the TSA with the proposed RFR which is comprised of unreasonable, arbitrary, and capricious regulation of both consensual and non-consensual components of the towing and recovery industry.

40. The RFR would also regulate the prices that towing, and recovery companies can charge for recovery services, which heretofore have never been regulated in Massachusetts, and would also contradict and conflict with the present regulations in force by the DPU.

41. Other than the very broad and vague introductory statement that the RFR is being put into effect "in order to maintain public safety and provide rapid assistance to motorists" there is nothing in the document to discern what, if any, safety concerns the new regulation is supposed to actually address.

42. It is unclear what the motivation of the MSP is to now implement these regulations.

43. Given the broad scope of towing and recovery activities that the regulation will affect, there is no obvious safety concern that is not already addressed under the current TSA or by the DPU.

44. There is no statutory authority for the MSP to promulgate these regulations which they seek to put into effect and enforce.

## COUNT I – INJUNCTIVE RELIEF

45. The Plaintiff incorporates herein the allegations contained in paragraphs 1 through 44 as if fully stated herein.

46. The MSP are impermissibly regulating the towing and recovery industry within the Commonwealth of Massachusetts in violation of 49 USC § 14501(c)(1) and usurps the authority of the DPU to regulate the industry pursuant to M.G.L c. 159B, *et. seq.* and conflict with 220 CMR 272.00 *et. seq.*

47. The RFR, once it is implemented, will terminate and replace the current TSA between the MSP and the towing and recovery companies that are signatories to the contract.

48. Towing and recovery companies that are currently in full compliance with the TSA and have invested large sums of money or incurred contractual debt in order to meet the requirements and specification of the RFR are at jeopardy of the benefits of their contract.

49. The time frame outlined in the RFR does not afford towing and recovery companies sufficient time to amass the necessary equipment, licensing, training, and certifications required to bid.

50. The MSP's implementation of the RFR will result in irreparable injury, loss, and damage to the Plaintiffs due to the unreasonable and illegal requirements set by the MSP to be adhered to in an unrealistic timeframe.

51. The Plaintiffs petition this Honorable Court to preliminarily enjoin the Defendant from implementing the RFR.

52. The Plaintiffs petition this Honorable Court to preliminarily enjoin the Defendant from enforcing the November 14, 2019[2] bid submission deadline in the RFR.

53. The Plaintiffs petition this Honorable Court to permanently enjoin the Defendant from implementing the RFR.

54. The Plaintiffs petition this Honorable Court to permanently enjoin the Defendant from enforcing the November 14, 2019 bid submission deadline in the RFR.

**WHEREFORE**, the Plaintiffs request that this Honorable Court find in the Plaintiffs' favor and against the Defendants and enter the preliminary and permanent injunctions as requested above.

## COUNT II – DECLARATORY JUDGMENT

55. The Plaintiff incorporates herein the allegations contained in paragraphs 1 through 54 as if fully stated herein.

56. An actual controversy has arisen between Plaintiffs and the Defendant as to whether the MSP lacks the authority to regulate the towing and recovery industry in the Commonwealth.

57. Plaintiffs seek a declaratory judgment decreeing that MSP lacks the authority to regulate the towing and recovery industry in the Commonwealth.

---

[2] The original bid submission deadline was set for October 24, 2019.  On October 23, 2019, the Commonwealth extended the bid submission deadline to November 14, 2019.

58. An actual controversy has arisen between Plaintiffs and the Defendant as to whether the MSP is usurping the authority of the DPU which is the sole governing body charged with regulating the towing and recovery industry in the Commonwealth.

59. Plaintiffs seek a declaratory judgment decreeing that MSP is usurping the authority of the DPU which is the sole governing body charged with regulating the towing and recovery industry in the Commonwealth.

60. An actual controversy has arisen between Plaintiffs and the Defendant as to whether the RFR violates federal law, including, but not limited to, 49 USC § 14501(c)(1), 49 USC § 14506(a), 49 USC § 521(b), and 26 CFR § 1926.1400(c)(3).

61. Plaintiffs seek a declaratory judgment decreeing that the RFR violates federal law, including, but not limited to, 49 USC § 14501(c)(1), 49 USC § 14506(a), 49 USC § 521(b), and 26 CFR § 1926.1400(c)(3).

62. An actual controversy has arisen between Plaintiffs and the Defendant as to whether the RFR violates state law, including, but not limited to, M.G.L. c. 159B, § 6B and 220 CMR 272.00 *et seq.*

63. Plaintiffs seek a declaratory judgment decreeing that the RFR violates and conflicts with M.G.L. c. 159B, § 6B and 220 CMR 272.00 *et seq.*

64. An actual controversy has arisen between Plaintiffs and the Defendant as to whether the RFR is unreasonable, arbitrary and capricious.

65. Plaintiffs seek a declaratory judgment decreeing that RFR is unreasonable, arbitrary and capricious.

***WHEREFORE***, the Plaintiffs request that this Honorable Court find in the Plaintiffs' favor and against the Defendants and enter a declaratory judgment as requested above.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully Submitted,
Statewide Towing Association, Inc., Towing and Recovery Association of America, Inc., C&L Towing, LLC, Waltham Auto Tow, Inc., Interstate Wrecker Service, Inc., Schlager's Auto Body Repair, Inc., and Todisco Services, Inc.,
By their Attorneys,

_____/s/ Patrick T. Matthews___
Patrick T. Matthews, Esquire
B.B.O. # 629498
PTMatthews@fallriverattorneys.com

_____/s/ Brian M. Tavares_____
Brian M. Tavares, Esquire
B.B.O. # 685949
BTavares@fallriverattorneys.com

_____/s/ Caitlin D. Oliver_____
Caitlin D. Oliver, Esquire
B.B.O. # 687238
Caitlin@fallriverattorneys.com

_____/s/ Jordan J. Rodrigues_____
Jordan J. Rodrigues, Esquire
B.B.O. # 696365
JRodrigues@fallriverattorneys.com

Coastal Legal Affiliates, P.C.
251 Bank Street
Fall River, MA 02720
Tel: (508) 676-6900
Fax: (508) 676-9908